## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>    Plaintiff,<br><br>    v.<br><br>**$2,100.00 IN UNITED STATES FUNDS,**<br>    First Named-Defendant Property, and<br><br>**$1,940.00 IN UNITED STATES FUNDS,**<br>    Second Named-Defendant Property. | CASE NO.: 3:25-CV-29 |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW, Plaintiff, the United States of America, by and through its attorney, the Acting United States Attorney for the Middle District of Georgia, brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure:

### *Nature of the Action*

1. This is a civil action *in rem* brought pursuant to Title 21, United States Code, Section 881(a)(6) to forfeit and condemn to the use and benefit of the United States of America certain personal property, to wit: two thousand, one hundred dollars ($2,100.00) in United States funds, and one thousand, nine hundred forty dollars ($1,940.00) in United States funds, (hereinafter collectively referred to as the "Defendant Property").

## *The Defendant in Rem*

2. The First-Named Defendant Property consists of a total of two thousand, one hundred dollars ($2,100.00) in United States funds, and was seized from Demetrius Appling, at the intersection of Moores Grove Road and Spring Valley Road, located in Winterville, Georgia, on or about June 18, 2024. The Defendant Property is presently in the custody of the United States Marshals Service, having been deposited into the Seized Asset Deposit Fund Account.

3. The Second-Named Defendant Property consists of a total of one thousand, nine hundred forty dollars ($1,940.00) in United States funds, and was seized from Demetrius Appling, at the Georgia Department of Community Supervision, located at 233 North Oliver Street, Elberton, Georgia, on or about October 21, 2024. The Defendant Property is presently in the custody of the United States Marshals Service, having been deposited into the Seized Asset Deposit Fund Account.

## *Jurisdiction and Venue*

4. Plaintiff brings this action *in rem* in its own right to forfeit the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has in rem jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this District, and 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this District. Upon the filing of this complaint, the Plaintiff requests that the Court issue an arrest warrant in rem pursuant to Supplemental Rule G(3)(b),

which the Plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this District, and 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1395, because the First-Named Defendant Property was seized in Athens-Clarke County, Georgia, and the Second-Named Defendant Property was seized in Elbert County, Georgia, which are places within the Middle District of Georgia.

7. After the seizure of the First-Named Defendant Property, the United States Department of Justice, Federal Bureau of Investigation ("FBI"), began administrative forfeiture proceedings. On or about November 26, 2024, Ericka Smith, 229 Paoli Road, Carlton, Georgia, filed an administrative claim for the Defendant Property with the FBI, after which the FBI referred the matter to the United States Attorney for the Middle District of Georgia.

8. After the seizure of the Second-Named Defendant Property, the United States Department of Justice, Federal Bureau of Investigation ("FBI"), began administrative forfeiture proceedings. On or about January 9, 2025, Ericka Smith, 229 Paoli Road, Carlton, Georgia, filed an administrative claim for the Defendant Property with the FBI, after which the FBI referred the matter to the United States Attorney for the Middle District of Georgia.

### *Basis For Forfeiture*

9. The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

### *Factual Allegations*

10. Since January 2024, agents with the FBI Athens Resident Office have been investigating the illegal drug activities of James Len Ramey ("Ramey") and other members of his drug trafficking organization operating in Athens, Georgia.

11. The investigation led to the identification of a number of persons alleged to be involved in the distribution of controlled substances including, but not limited to: James Len Ramey, Christopher Bryan Hyatt, Kendell David Cawthon, Bonterris Romans Turner "(Turner"), Demetrius Antonio Appling ("Appling"), Andrea Marie Robinson, Yuretzi Adame Gomez, Yirla Adame Gomez, Rafael Gomez Flores, Uriel Garcia, Jared Calhoun, and Ebony Jones-Tate.

12. Throughout the investigation, wire and electronic intercepts have shown a consistent pattern of Ramey and members of his drug trafficking organization possessing and distributing controlled substances.

13. Ramey worked at Rapid Lube & Rapid Tire ("Rapid Lube") in Athens, Georgia. From Rapid Lube, Ramey sold narcotics daily to his customers. Ramey received

the methamphetamine that he sold from a source-of-supply in Mexico who he communicated with via WhatsApp. Ramey also occasionally sold cocaine.

14.     Between approximately February 29, 2024, and June 8, 2024, Turner was observed by agents meeting with Ramey at the Rapid Lube fifteen (15) different times. Through pole camera footage and wire intercepts, agents determined that Ramey was distributing methamphetamine and cocaine to Turner from the Rapid Lube.

15.     On March 5, 2024, pole camera footage showed Turner pulling into the Rapid Lube parking lot in his black F-250 truck at 3:11 p.m. Ramey opened the passenger's side door of Turner's truck and put a box inside the cab of the truck at 3:14:04 p.m. At 3:14:51 p.m. Ramey got out of the cab of the truck with money visible in his hand.

16.     On May 12, 2024, at 11:08:37 a.m., Turner arrived at Rapid Lube, in his white GMC Sierra truck. Turner exited the truck with something in his hand and walked to the rear office door. At 11:09:09 a.m., Turner walked out of the rear office door with Ramey following behind him. Turner walked to the front of Ramey's vehicle. It did not appear that Ramey retrieved anything from his vehicle. Ramey and Turner walked back into the office. At 11:11:44 a.m., Turner, followed by Ramey, walked out of the rear office door with a small cardboard box in his left hand. At 11:12:32 a.m., Turner left the parking lot.

17.     On June 11, 2024, at 2:06 p.m. a wire was intercepted between Turner and Ramey. Immediately following this phone call, Ramey was observed on pole camera footage walking into the back parking lot of the Rapid Lube with a box in his hand. Turner then arrived in the back parking lot of Rapid Lube at 3:05 p.m. in his black F-250 truck.

Ramey handed the box to the driver of the truck (believed to be Turner) and the truck left Rapid Lube.

18. On June 18, 2024, at 10:09 a.m., a wire was intercepted between Turner and Ramey. Immediately following this phone call, agents initiated physical surveillance at Rapid Lube. At approximately 10:18 a.m., agents conducted a spot check at Turner's known address, 110 Barrington Place, Apartment 1, in Athens, Georgia, where they observed Turner's black Ford F-250 truck and his white GMC Sierra truck. Shortly thereafter, a white Chevrolet Silverado was observed in the parking lot in front of Turner's apartment. The driver of the Chevrolet Silverado was identified by agents as Demetrius Antonio Appling. At 10:54 a.m., Turner was identified wearing a bright lime green t-shirt meeting with Appling in his driveway. At 10:57 a.m., Turner entered the black F-250 and left his residence. Turner was observed driving in the direction of Rapid Lube.

19. On June 18, 2024, at 10:59 a.m., a wire was intercepted between Turner and Ramey. Following this phone call, Turner was captured on the pole camera at 11:03 a.m. arriving at Rapid Lube. Ramey was then observed handling Turner a box. Turner then immediately left the Rapid Lube and returned to his residence. Agents observed Appling, who appeared to be waiting on Turner, get out of his Chevrolet Silverado and start talking to Turner through the window of Turner's truck. Agents observed Turner hand Appling a small cardboard box, which appeared to be the same box Ramey handed Turner just minutes earlier. At approximately 11:14 a.m., agents observed Appling put the small box in his Chevrolet Silverado and leave Turner's residence.

20.     When Appling left Turner's residence, agents began following him on Gaines School Road towards Cherokee Road in Athens, Georgia. Agents maintained surveillance on Appling until Senior Trooper First Class Lacey, with the Georgia State Patrol was able to arrive and conduct a traffic stop on Appling in Winterville, Georgia, for speeding.

21.     While SFC Lacey was writing a citation for Appling, Officer Castels, with the Athens-Clarke County Police Department, arrived at the scene of the traffic stop and deployed a dog, trained to detect the odor of certain controlled substances ("K-9"), to conduct a free air sweep of the vehicle. The K-9 gave a positive alert to the odor of illegal drugs coming from inside the vehicle.

22.     Based on the positive alert to drugs by the K-9, SFC Lacey searched Appling's truck. During the search, SFC Lacey opened the oil filter box inside the truck and immediately noticed that it contained a large amount of suspected methamphetamine in a Ziploc bag. In addition to the drugs, SFC Lacey seized two (2) cell phones from Appling and $2,100.00 in cash found in the pocket of his shorts.

23.     Special Agent Bryan McCusker, with the FBI, met with SFC Lacey and collected the oil filter box, suspected methamphetamine, U.S. currency, and the two (2) cell phones. SA McCusker observed that the oil filter box was similar, if not identical, to the oil filter boxes provided to a confidential human source by Ramey in previous controlled buys. In addition, SA McCusker observed the marking "1/2" on the corner of the box, which appeared to be a reference to ½ kilogram. The suspected

methamphetamine in the Ziploc bag weighed approximately 515 grams, and field tested positive for methamphetamine.

24. An inquiry made to the Department of Labor employment history and wage verification on the Social Security Number associated with Appling revealed that no verifiable employment had been reported.

25. On July 9, 2024, based on the investigation, an Indictment was returned by the Federal Grand Jury in Criminal Case Number: 3:24-CR-24 (TES), in the Middle District of Georgia, charging James Len Ramey, and others, (including Appling) with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Cocaine, and Possession with Intent to Distribute Methamphetamine.

26. On September 11, 2024, a Superseding Indictment was returned by the Federal Grand Jury in Criminal Case Number: 3:24-CR-24 (TES), in the Middle District of Georgia, charging James Len Ramey, and others, (including Appling) with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Cocaine, and Possession with Intent to Distribute Methamphetamine.

27. On October 21, 2024, Appling was arrested pursuant to an arrest warrant issued in the Middle District of Georgia, at the Georgia Department of Community Supervision Offices. Appling was in possession of two (2) Apple cellphones and $1,940.00 in U.S. currency. The two (2) phones and the currency were seized, and Appling was transported to the Jones County Jail.

28. On February 24, 2025, the Government filed a Notice of Bill of Particulars for Forfeiture of Property specifically naming the First-Named Defendant Property as

subject to forfeiture [MDGA Criminal Case Number: 3:24-CR-24 (TES), Doc. 172]. The Second-Named Defendant Property was not listed in the Notice of Bill of Particulars for Forfeiture of Property because it was seized after the conspiracy time period charged in the related Superseding Indictment.

29.     The First-Named Defendant Property seized consisted of a total of $2,100.00 in United States currency found in the pocket of Appling's shorts during the traffic stop on June 18, 2024. The Second-Named Defendant Property seized consisted of a total of $1,940.00 in United States currency found on Appling's person while being arrested on October 21, 2024.

## *Conclusion*

30.     Based on the foregoing, probable cause exists to believe that the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, punishable by more than one year's imprisonment, constitutes proceeds traceable to such an exchange, and/or constitutes money used or intended to be used to facilitate a violation of the Controlled Substances Act, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that process of warrant issue for the arrest of the Defendant Property; that due notice be given to all parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendant Property forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as

this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted, this 24th day of February, 2025.

                C. SHANELLE BOOKER
                ACTING UNITED STATES ATTORNEY

BY:   */s/ Michael P. Morrill*
       MICHAEL PATRICK MORRILL
       Assistant United States Attorney
       Georgia Bar Number: 545410
       United States Attorney's Office
       Middle District of Georgia
       Post Office Box 1702
       Macon, Georgia 31202-1702
       Telephone: (478) 752-3511
       Facsimile: (478) 621-2655
       E-mail: Michael.Morrill@usdoj.gov